So, counsel, if you're ready to proceed, we're ready to hear you in case number 176162 Hubbard v. OK Dept. of Human Services. May it please the Court. My name is Jerry Colclager. I'd ask to reserve two minutes for rebuttal. I represent the estate of Andrew Pryor, a two-year-old child who the state alleges was murdered by a foster parent who was selected by DHS, into whose home, in August of 2013, DHS placed him, his name is Andrew, with his four-year-old little sister, C.E.H., who in this argument, for ease of argument, we'll refer to as Cindy, and also his six-year-old little brother, E.J.H., who I'll refer to in this argument as Edward. I know you've read the briefs, and I'll move right to the argument, addressing what I believe are the most critical errors of the district court. In this case, the district court dismissed all of plaintiff's claims against DHS and the individual defendants. My argument here today is going to focus primarily on plaintiff's Section 1983 claims against the DHS and the individual defendants, and quite honestly, the majority of it is going to be on what it takes to shock the conscience of federal judges. Of course, the analysis of a sect- A lot. Sorry? A lot. I understand, Judge. We've got a high burden to meet here today, and we think this case meets that burden. The fact is, the analysis of a Section 1983 claim, and I apologize to the court, somehow I got off with the wrong set of glasses, so I'm going to be struggling a little bit today, trying to use my wife's glasses, but in any event, I think I can get through it. We start with the general rule that a state and its employees- I hope she's not astigmatic. I'm sorry? I said, I hope she's not astigmatic. Yes. We start with the general rule that a state and its employees are liable only for their own acts and failures to act, and are therefore not liable for the actions and inactions of private individuals. However, as the court's well aware, there's two exceptions to this rule, the special relationship doctrine and the danger of creation theory, both of which the district court correctly determined applied in this case. Special relationship doctrine applies when the state assumes control over an individual sufficient to trigger a duty to provide protection to that individual. The doctrine's common to cases where police have taken individuals into custody. It's also very common to child welfare cases where workers take custody of abused and neglected children. Your Honor, have you pled any constitutional violations? We pled the substantive due process constitutional violation as part of the Section 1983 claim. We also, Your Honor, any time you're trying to decide whether or not the state has sufficient control, it depends upon at what point in the process you're talking about. In this case, there were three time periods that the court was faced with. The first was before the children were removed from the custody of DHS. The second time period was after they were removed from custody, but we believe were improvidently placed back with the natural parents for a trial reunification period. And finally, the third and most important time period in this case for a special relationship doctrine is after the children were placed with the foster parents, which includes the decision to place the children with the foster parents as well as the failure not to remove the children after substantial risks were presented. I'm sorry to ask questions, but that's sort of the purpose of the hearing. Have you pled anything beyond negligence in this case? We didn't plead negligence, Judge, because there was no – well, we pled negligence. Negligence was dismissed. There was no notice filed on the Governmental Tort Claims Act. The clients didn't come to our office until long after the notice period had resolved. Let me restate my question. Have you asserted any facts or claims that rise beyond this negligent standard of care? I'm trying to find out what your assertion is with respect to the conduct that rises beyond a level of negligence. We've not asserted and don't have any information at this point that there's any intentional or wrongful motive-type evidence in this case. This is horrendous, reckless conduct in face of what we believe to be very clear risks that the caseworker saw. We believe the most important – And under 1983, what is your best case authority that makes your claims here actionable? Well, I think that if we look at the case law, I think both the Currier case and the recent TD v. Patton case both support a finding that this case was analyzed incorrectly. And that as a result of that analysis, an incorrect analysis, and what I'm referring to is with respect to – and I'll get right to the meat of the question. The trial court, in determining the motion to dismiss, went through each of the individual defendants and basically analyzed each of the individual defendants' actions in a vacuum. Basically took each individual defendants, and of course, we know that – well, let me go on. So you do not contend that the action of any of the individual defendants was purposeful or willful? To harm my clients, no, sir, I don't. We contend that it was extremely reckless, and we think that reckless conduct – and according to DeShaney – well, really, according to Currier and the Patton case, extremely reckless conduct can suffice to do so. We believe, Judge, that liability should not be able to be avoided by spreading it out among a number of different actors, by all the state actors. If you have a situation with DHS, which is what you do, DHS works in a team effort. They have a number of employees that all handle, especially in busy counties like Tulsa and Oklahoma County, they work on a team approach. But what draws all this into one pile is the fact that every one of their actions, their placements, their findings, the facts that they have, the referrals, it's all into a database that they are required to know. So when any worker makes a decision, they make a decision with the knowledge of all prior decisions made by other workers. Well, counsel, it sounds as if you're trying to make an argument that there should be some kind of collective responsibility on the part of the individual defendants. But that wasn't really the analysis in either Currier or TD, was it? I mean, the courts looked at the conduct of the specific defendant in those cases. Well, with all due respect, Judge, I disagree. Well, tell me why those cases support the theory that you're advocating right now. Well, we don't disagree that the trial court needs to know what each individual does. But the determination of shock to conscience has to be based upon the compilation of all of the defendants together. But then who's liable? I mean, who's liable at the end of the day? You've sued a whole list of people individually for a 1983 violation. Are you saying that every single one of them owes your client damages under 1983? Because they can collectively, you're going to sum up the whole is greater than the sum of the parts? I just don't see where that fits with 1983 analysis. Well, I'd quote from two opinions of this case, of this court. First is in TD v. Patton, where it referred to the Currier case. This is on page 29, where the court says, Currier shows Mr. Duran, Ms. Medina, and Ms. Gonzalez, the three individual defendants, could be held individually responsible for their unconstitutional actions when they, quote, collectively contributed to a deprivation of the children's constitutional right. Footnote 17 of the TD v. Patton opinion states, When stating Ms. Patton was responsible for TD's placement, we do not intend to suggest that she was solely responsible for the placement decision. We use the term to describe her significant contribution to the placement, thereby making her responsible, potentially along with others, for creating the danger posed to TD. I agree with Your Honor that we have to show that each of these individual defendants took some action or failed to act that should make them culpable. But the issue of whether or not the actions shocked the conscience is an issue that you have to judge from all of the defendants' conduct together, I believe. And I think that's what the court has indicated. How do you impute conduct, for example, for Ms. Busbee at one point in all of this, to say Defendant Williams or Defendants Duggar and Johnson? I just don't see how you can take one individual's conduct and say, Oh, we don't like what happened here, we don't like what happened there, and then together it shocks the conscience. Is that really what TD is talking about? Well, I think it is, Judge, and I think that's the only way it makes sense. Well, I'll have to read it again. I mean, it was my opinion. I understand, and I know I'm arguing, preaching to the choir somewhat, but I'm telling the court that the only way it makes sense on a shocks the conscience in a large organization of state actors is to view the shocks the conscience. And we're just talking about those two, the substantial risk and whether or not it shocks the conscience. You have to look at the actions of all the defendants. So if there's a worker at DHS who had minimal involvement in all of this but nonetheless is named as a defendant, and then there's a collective shocks the conscience, that person's on the hook for damages? Well, not necessarily, Judge, because you've made it clear in your opinion that, for example, with regard to Ms. Patton, that she has to have significant contribution to the unconstitutional actions that harmed the plaintiff, not just minimal. We're not making the argument that someone obtains liability in a very terrible situation simply because they made one phone call. We're saying if they had significant contribution, which I believe is what the court said specifically or collectively contributed. So how many defendants do we have here? Twenty-four. And are you saying all 24 are liable? All 24 are liable for shocks the conscience, substantive due process? Well. Are you willing to concede that some of them don't? I do concede to that, Judge. Then why are they still in the case? Well, they're still in the case, Judge, because of the way our system works. No, the system works if you don't have a claim. You don't keep them in the case, right? Well, Judge, the shocks the conscience concept is a subjective determination by a federal judge to determine first at the trial court and then at this court as to what shocks the conscience. Well, whose defendants, which defendants' conduct here should shock our conscience individually? Well, I think Defendant Busbee's conduct would shock the conscience for sure. In fact, the supervisor referred to the conduct of the DHS worker, quote, as heinous and shocking. But, Judge, we have critical facts here. One of the facts of this case that you can't get around is the fact that these workers, at least three of them were aware, and another two supervisors and four other workers, they have case notes that indicate that they discussed this. They knew that this child, the 6-year-old Edward, was sexually abusing Cindy. They knew that Edward had admitted that. Well, counsel, we've read the briefs and we understand the facts, but we'd like to understand not this collective they. I'd like to hear more of an answer to Judge DeSero's question. You've talked about Ms. Busbee. Which of the defendants most satisfies the shocks the conscience standard? You mentioned her. Who else and why? Judge, the defendants, and I'm out of time, Your Honor. We'll extend due a minute of rebuttal so you can answer the question comfortably. One moment, Your Honor. DHS worker McCartney included would be one. She's the one that went to the home, received the information from Edward that he was sexually abusing Cindy, from Cindy that she was being sexually abused, from the foster parents that said that the children were being sexually abused in the home. She was the one that allowed four months to go by before Edward was removed from the home. She was the one that the foster parents asked Edward to be taken out of the home. And then later on, Judge, Supervisor Carraway was aware of the sexual abuse of the initial referral, and all that was done was to do a referral to therapeutic services for Edward, did not remove him from the home. Later on, McCartney met with Supervisors Carraway, Williams, Thompson, Demers, and District Director Heath. Are you reading from the brief, basically? No, sir. I'm pointing out just the specific workers, DHS workers, that were knowledgeable of the risk and failed to take any action to protect from that risk. And that's the main risk. There's other allegations that are in the brief. Your time is up. Thank you. Thank you. Hear from your colleague here. Or as they say in D.C., from your friend. I hope you're friends. I believe so, Your Honor. I hope so as well. May it please the Court. My name is John Langford, and I represent the defendant's appellees in this matter. I guess I'll dive right in. I think I would disagree respectfully with my colleague's assessment that it's wrong to judge each defendant in a vacuum and that you have to spread out the liability over everyone. I don't think that's what this Court has told us in Paul's and other cases. I think each defendant is entitled to be judged on their own. Well, what do we do just as an academic proposition with the case where the collective conduct of the defendants really does shock the conduct? It's to the point of outrageous behavior institutionally. But you can't pin the conduct on any one individual defendant. Do the defendants just go free and the victim is without a remedy? Well, it's an interesting question, Judge. I think, I mean, I understand sort of the balancing inequities at play there, but to me the other side of that is the chilling effect that that would have potentially on social workers if somehow now they're all jointly and severally liable for the actions of the others. You know, for example, supervisors aren't liable for the actions of their subordinates simply because they're the supervisor. They need to promulgate a policy or a procedure that they then implement and force to be carried out. I mean, I think, yes, it could be concerning if there was such a collection of disparate actions that when viewed as a whole would shock the conscience. I don't know that that's the case here, but even if it was, the dearth of individual action by certain defendants, I don't think that should subject them to liability under 19. Well, what about zeroing in on Ms. Busby, for example? Why didn't the allegations in the complaint state a special relationship substantive due process claim, given her awareness of the sexual abuse and her failure to respond?  Well, I think from my memory, Busby was aware of these allegations, but the children were also referred to therapy. And I think the bulk of the allegations against her were that the children were missing therapy appointments. And while I think that may be sort of a – even if it was reckless, which I don't know that I could go that far, but even if it was reckless beyond just negligence in allowing the children – I think the allegation was that in two months they had missed 50 percent of the appointments. I don't know that that would be enough to show something that shocks the conscience, especially when plaintiff sort of concedes that there's no evidence of any intent by any of the defendants to cause injury. She's aware of the sexual abuse. She's aware that the response to it is supposed to be family therapy of some kind. And then she's aware that it's not happening. In the face of sexual abuse, child on child, and awareness that it isn't being addressed, I guess I'm back to the same question. Why isn't that a shocks the conscience claim? Well, I think in the light that's favorable to plaintiff, that's showing inaction, not affirmative conduct, which I think is required under a shocks the conscience standard. But again, I think even the issue of the foster parent not getting the children to – What case have you got for that? I beg your pardon? You said that that doesn't state a claim under shocks the conscience doctrine. For inaction? Yeah. I think it was Rob and Jerome. Even under a special relationship theory? I mean, at this point, you're not contesting that there was a special relationship. Well, I think it's sort of breaking into the three time periods of counsel. I'm at the point where Ms. Busby learned that one child was abusing the other child in the foster care situation. That's a special relationship context, correct? Correct, Your Honor. I would have no disagreement that a special relationship existed post-trial reunification and therefore. Plaintiff relies on Courier to somehow say that it's proper to sort of lump these defendants all together, but I don't understand Courier to say that. Courier doesn't, to me, stand for the proposition that you can just sort of create one pile, put them all together, and now we have liability. I'm not entirely sure if the plaintiff is abandoning its appeal of the dismissal of DHS, but to touch on that just briefly, it's clear that there was no notice under the tort claim given, and it's clear that that's a jurisdictional issue. And so plaintiffs offer no authority under the law that that is not the case. And to go further, a so-called Bosch claim exists under the precepts of the Tort Claims Act, but even beyond that, the fact remains that Bosch only exists to provide a claim when there's no claim available under the Tort Claims Act due to some exemption. But the problem there, of course, is that it didn't even get to the point where an exemption was identified. It's simply the failure to provide notice to invoke the jurisdiction over DHS that way. Could I ask you a question about the Oklahoma Government Tort Claims Act? If the complaint has alleged that the defendants were engaged in willful and wanton conduct, and you may not agree that it does, but let's assume that it does, does that take them outside immunity coverage under the act? No, sir. And it's sort of a curious – Because I've been struggling with that a little bit. If you've got a case, that would be really helpful. I think the best case for that is Pellegrino, really. And it's sort of, for lack of a better term, reverse engineering it. In other words, I would typically come here saying that willful conduct puts them outside the scope of their employment, but there's no allegation here that they were outside the scope of their employment. And moreover, in large measure, if it was alleged to be willful misconduct, plaintiffs typically argue that that's a fact question for the jury, whether they're outside the scope of their employment. I don't believe they're outside the scope of their employment, and there's no allegation that they're outside the scope of their employment. Doesn't willful and wanton take them outside the scope of their employment? No, sir. And, in fact, I think that's what Pellegrino – Okay, so you're saying that that's what Pellegrino stands for. Pellegrino also talks about the notice requirement, and as I understand it holds that no notice is required if the conduct alleged is outside the scope of the employment. Is that correct? Well, as to those individual defendants, I would think so, Your Honor, because they would be outside the immunity from liability afforded by the act. All right. But has there been since Pellegrino, has the legislature amended the statute in a way that would call for notice that Pellegrino did not require? Has anything happened? Has the statute been amended that alters the Pellegrino notice discussion? Not that I'm aware of. In fact, as I understand the law, notice is the sort of genesis of every action against the state, or more candidly, I guess you would have to allege in your complaint for negligence to lie against individual workers that they were outside the scope of their employment. Okay, so let me just get straight. If the complaint alleges conduct outside the scope of employment, notice is not required. To DHS or to the workers, Your Honor? I just want to be sure. Well, I guess I'm just talking about the statute, but some form of notice. Well, I mean, I think that's sort of the issue, is that if they were in the scope and course of their employment, then we're subject to the GTCA, and so notice would be afforded to the state. If the allegation is that they're outside the scope of their employment, then there's no GTCA claim available as to the state. I guess where I'm going with this is whether lack of notice takes care of the state claims in this case. I think it does, Your Honor. I think it's a jurisdictional precept that has to be followed. To this idea of a tolling or something like that, I think the district court summed it up well in pointing out that if that was the case, they could have still filed the notice, and as a defense to that, made the argument that it should be equitably tolled or something of that nature. Instead, they jumped straight to a complaint, bypassing that, and even all this time later, no notice has been filed. I refresh my recollection. Were there any federal claims asserted against the department, or are they all state? They are all state. There are obviously negligence claims and other claims against the department, state claims, but were any federal claims asserted? I do not recall any federal claims against the agency. Thank you. So discretion being the better part of valor. If there's no more questions, I will close. That's a good rule to follow. Counsel, I went ahead and extended an extra minute. Thank you, Your Honor. To you. I know you were desperately trying to save your two minutes, but we'll give you one. I appreciate it. In response, Judge, I'd first like to say, judges, that we're not suggesting joint and several liability here. We're not suggesting that simply because somebody's name happened to be on a phone record that they should have liability. We still have to show that, and that's why I think the courts note that substantial participation has to be proven. We have to show that this person knew what was going on, and with DHS, the key factor here is we have no less than, I'm going to say, six or seven employees and supervisors who were well aware of the sexual abuse in the home. They were well aware that they were leaving Edward in the home where he was sexually abusing. Six weeks later, they were well aware that Edward had acted out again at the babysitters for a new referral. They were well aware that the family was using corporal punishment, that they were using drugs. The worker herself smelled drugs in the home. All of those workers, six or seven, had awareness of that risk. Thank you, counsel. We understand the argument, and we'll review the briefs carefully. The case is well presented by counsel. The case is submitted. Counsel are excused. Thank you. Thank you both.